UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RALPH L. MARTIN, JR.,

         DECISION & ORDER

      Plaintiff,

         18-CV-0720MWP

   v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

## PRELIMINARY STATEMENT

    Plaintiff Ralph L. Martin, Jr. ("Martin") brings this action pursuant to Section 205(g) of the Social Security Act , 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 13).

    Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Martin's motion for judgment on the pleadings is denied.

**DISCUSSION**

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Procedural History

Martin protectively filed for SSI on June 21, 2012, alleging disability due to injuries to his left ankle and right knee. (Tr. 103, 107).[1] On November 20, 2012, the Social Security Administration (the "SSA") denied Martin's claim for benefits, finding that he was not disabled. (Tr. 56). Martin requested and was granted a hearing before Administrative Law Judge Timothy J. Trost ("ALJ Trost"). (Tr. 67-69, 76-80). ALJ Trost conducted a hearing on April 29, 2014. (Tr. 28-49). In a decision dated August 11, 2014, ALJ Trost found that Martin was not disabled and was not entitled to benefits. (Tr. 10-27). On November 4, 2015, the Appeals Council denied Martin's request for review of the ALJ's decision. (Tr. 1-4).

Martin commenced an action seeking review of the Commissioner's decision. (Tr. 523-49). On January 26, 2017, United States District Judge Michael A. Telesca vacated the Commissioner's decision and remanded the matter for further proceedings. (Tr. 550-61). Judge Telesca determined that ALJ Trost had erred by failing to develop the record with respect to Martin's mental health impairments. (*Id.*). Although he noted that the SSA had sent a letter to Martin's psychiatrist Sanjay Gupta ("Gupta"), MD, requesting "copies of all [of Martin's] records from the period February 1, 2013, to present," Judge Telesca nevertheless concluded that, in view of the apparent substantial treatment history between Gupta and Martin, "the ALJ had a heightened duty to recognize that potentially significant treatment notes from [Gupta] were

---

[1] The administrative transcript shall be referred to as "Tr. __."

4

absent, and to make an effort to obtain those notes." (Tr. 558). He also concluded that ALJ Trost had failed to develop the record by either obtaining a functional assessment from Gupta "or at the very least order[ing] a consulting psychiatric examination." (Tr. 560).

Upon remand, Administrative Law Judge William Weir (the "ALJ") attempted to develop the record regarding Martin's mental health impairments in several respects. First, he "requested treatment records and a medical source statement from [Gupta]." (Tr. 368, 665-72). Next, he ordered a consultative psychiatric evaluation of Martin, which was conducted by John Laurence Miller ("Miller"), PhD, on September 11, 2017. (Tr. 693-700). Finally, the ALJ requested and secured the assistance of a testifying expert, Nicole Martinez ("Martinez"), Psy.D., during the subsequent administrative hearing held on March 5, 2018. (Tr. 368, 432-98, 701-15).

In a decision dated April 11, 2018, the ALJ found that Martin was not disabled and was not entitled to benefits. (Tr. 365-87). Martin commenced this action on June 28, 2018, seeking review of the Commissioner's final decision. (Docket # 1).

### III. ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 368-81). At step one of the process, the ALJ found that Martin had not engaged in substantial gainful activity since June 21, 2012, the application date. (*Id.*). At step two, the ALJ concluded that Martin had the severe impairments of bipolar disorder, status post right knee surgery, and status post left ankle surgery. (*Id.*). The ALJ concluded that Martin also suffered from other impairments that were not severe. (*Id.*). At step three, the ALJ determined that Martin did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (*Id.*). With respect to Martin's mental limitations, the

5

ALJ found that he suffered from moderate limitations in understanding, remembering, or applying information and interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and no limitations in adapting or managing oneself. (*Id.*). The ALJ concluded that Martin had the RFC to perform sedentary work involving "simple, repetitive, one and two step tasks" and occasional social contact with coworkers, supervisors, and the public that does not exceed fifteen minutes at a time more than once a day. (*Id.*). According to the ALJ, Martin could not perform complex tasks or change work locations or tasks more than once a day. (*Id.*). At steps four and five, the ALJ determined that Martin had no relevant past work and that jobs existed in the national economy that Martin could perform, including the positions of optical assembler and lens inserter. (*Id.*). Accordingly, the ALJ found that Martin was not disabled. (*Id.*).

IV.     **Martin's Contentions**

Martin contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8-1, 12). First, Martin challenges the determination on the grounds that the ALJ failed to properly develop the administrative record. (Docket ## 8-1 at 18-20; 12 at 1-2). Next, Martin maintains that the ALJ improperly evaluated the medical opinion evidence by relying upon Martinez's opinion and failing to give good reasons for rejecting Miller's opinion. (Docket ## 8-1 at 20-23; 12 at 3).

V.      **Analysis**

Martin maintains that remand is required because the ALJ failed to properly develop the administrative record by obtaining his entire treatment history from Mid-Erie

6

Counseling and Treatment Services ("Mid-Erie"), where he received mental health treatment between 2014 and 2017.[2]  (Docket ## 8-1 at 18-20; 12 at 1-2).  According to Martin, despite the fact that the case had been remanded with explicit directions to obtain those records, the ALJ failed to obtain more than a handful of additional records.  (*Id.*).

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding."  *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013).  Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'"  *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386).  Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, *7 (W.D.N.Y. 2018) (ALJ's duty to develop the record "is a threshold requirement for the SSA; the ALJ must develop the record prior to assessing whether a claimant is disabled"); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y. 2015) ("[t]he reviewing court must ensure that 'all of the relevant facts [are] sufficiently developed and considered'") (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010)).  The fact that a claimant is

---

[2] Prior to remand, the administrative record contained therapy session notes from 2013 and early 2014 authored by Shaun Crimmins ("Crimmins"), LMSW, who provided counseling services to Martin.  (Tr. 287-310, 346-48).  It also contained several letters authored by Gupta and Crimmins relating to Martin's ongoing treatment.  (Tr. 209, 320, 321).

7

represented during the administrative hearing does not relieve the ALJ of his duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("it is the well-established rule in our circuit" that such a duty exists "[e]ven when a claimant is represented by counsel"). On the other hand, where the record contains no obvious gaps and the ALJ possesses a "complete medical history," no additional efforts by the ALJ to further develop the record are required. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

I disagree that the ALJ failed to fulfill his duty to develop the record with respect to Martin's mental health impairments. While "the ALJ has [an] affirmative duty to develop the record, the ALJ's duty to [do so] is not infinite." *Peterson v. Berryhill*, 2018 WL 4232896, *4 (W.D.N.Y. 2018). Accordingly, "[w]hen evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *Id.* (internal quotations omitted). In this case, I conclude that the ALJ fulfilled his duty, which resulted in no obvious gap in the record.

As noted, this matter was remanded for further consideration of Martin's mental health impairments with instructions to obtain treatment records and a functional assessment of Martin's mental capabilities. The record demonstrates that the ALJ attempted to comply with that directive by requesting treatment records and a medical source statement from Gupta. (Tr. 368, 550-61, 665-72). The only additional records obtained from Mid-Erie consisted of a comprehensive assessment completed at the time of Martin's admission to treatment in February 2013, a treatment plan containing notes made quarterly during the period 2014 through 2017 summarizing Martin's progress towards his treatment goals, and a summary of his discharge from treatment in June 2017; no medical source statement was provided by Gupta. (Tr. 793-817). The ALJ ordered a consultative psychological evaluation of Martin and secured a

8

medical expert to review the administrative record and testify at the hearing. (Tr. 368, 441-50, 693-700). I find that the record as developed by the ALJ on remand provided "sufficient evidence of plaintiff's subjective and objective psychological conditions during the relevant period." *See Peterson v. Berryhill*, 2018 WL 4232896 at *4.

The Mid-Erie treatment plan summary documenting Martin's progress on a quarterly basis demonstrates that he continued to attend psychotherapy sessions and medication management appointments through 2017. (Tr. 809-17). Progress notes suggest that Martin's treatment during this period became more sporadic owing both to Martin's stability with treatment and his poor attendance with appointments. (*Id.*). Martin repeatedly reported that his medication was effective in reducing his symptoms and did not cause side effects. (*Id.*). The notes also suggest that Martin was considering employment options but rejected his counselor's suggestion that he link with ACCESS-VR. (*Id.*). In May 2017 Martin was discharged from treatment by Mid-Erie because he had been "provided maximum benefit of services." (Tr. 818). According to the discharge summary, Martin refused to attend a chemical dependency evaluation, despite his providers' belief that continued alcohol use was a barrier to further mental health treatment, and "consistently display[ed] agitation towards staff [and was] very resistant to counseling process."[3] (*Id.*).

On September 11, 2017, state examiner Miller conducted a consultative psychiatric evaluation of Martin. (Tr. 693-700). Upon examination, Miller noted that Martin appeared his stated age, was casually dressed and well-groomed, and had normal motor behavior and eye contact. (*Id.*). Miller opined that Martin had fluent, clear speech with adequate

---

[3] The record also contains treatment notes from Horizon Mental Health ("Horizon"), where Martin began treatment in January 2018 following his discharge from Mid-Erie. (Tr. 388-423, 823-38). The Horizon records suggest that when Martin began treatment there in January 2018, he complained of increased mental health symptoms resulting from his mother's illness and subsequent death. (*Id.*).

9

language, coherent and goal-directed thought processes, dysphoric affect, dysthymic mood, clear sensorium, full orientation, and below average intellectual functioning with a somewhat limited general fund of information. (*Id.*). Miller noted that Martin's attention and concentration were impaired due to limited intellectual functioning. (*Id.*). Martin was able to perform simple calculations and to complete serial threes to seventeen, but declined to perform serial sevens. (*Id.*). According to Miller, Martin's recent and remote memory skills were impaired due to limited intellectual functioning. (*Id.*). Miller noted that Martin could recall three out of three objects immediately and three out of three objects after delay and could complete four digits forward and three digits backward. (*Id.*).

Miller assessed that Martin suffered from unspecified psychotic disorder, panic disorder, and rule out borderline intellectual functioning. (*Id.*). He opined that Martin was markedly[4] limited in his ability to carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with the public and supervisors. (*Id.*). He also opined that Martin was moderately[5] limited in his ability to understand and remember complex instructions, make judgments on simple work-related decisions, carry out simple instructions, interact appropriately with coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*). According to Miller, Martin was mildly[6] limited in his ability to understand and remember simple instructions. (*Id.*).

---

[4] This term was defined to indicate that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (*Id.*).

[5] This term was defined to indicate that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is fair." (*Id.*).

[6] This term was defined to indicate that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." (*Id.*).

During the administrative hearing, Martinez testified that she had reviewed Martin's medical records and assessed that he suffered from bipolar disorder, which did not meet or functionally equal any of the listings. (Tr. 442-43). According to Martinez, she believed that Martin would be able to perform simple tasks in a low social contact setting, particularly if he were limited to occasional contact with the public. (Tr. 443, 445). She also testified that Miller's report endorsed diagnoses and functional limitations inconsistent with the record. (Tr. 446-47). Martinez also indicated that the records she had reviewed provided sufficient information from which to form her opinions. (Tr. 447-48).

Martin testified at the hearing that he had spent substantial time over the past ten months providing support and care to his mother before her death. (Tr. 454). Martin also testified that the medication prescribed to address his bipolar disorder caused nausea and drowsiness, which he believed would interfere with his ability to work. (Tr. 460, 476-77). According to him, his ability to work would also be impeded by his irritability around other people. (Tr. 470). He testified that he spent most of his time reading fiction, writing poetry, communicating with relatives, and helping his nieces and nephews with their homework. (Tr. 477-78, 480-81).

Taken together, the medical records contained in the record provided an adequate "summary of [Martin's] treatment." *Peterson*, 2018 WL 4232896 at *4. They revealed that although Martin was repeatedly diagnosed with bipolar disorder, he improved with treatment and medication management and was able to live independently, manage his activities of daily living, and provide care to his mother during her illness. The ALJ's decision accounted for Martin's diagnosed bipolar disorder, and his RFC determination was supported by Mid-Erie treatment records contained in the record, Martin's own testimony, and Martinez's opinion that Martin was

able to perform simple work in a low contact setting. "In light of the above, the ALJ had no obligation to obtain additional treating records."[7] *Peterson*, 2018 WL 4232896 at *5; *see Pace v. Comm'r*, 2019 WL 1649501, *4 (W.D.N.Y. 2019) (ALJ adequately developed the record where it contained "plaintiff's psychiatric records but not mental health counseling notes[;] . . . [t]his [c]ourt finds that there is no gap, despite the noted absence of mental health counseling notes").

I further find that the ALJ did not err by according greater weight to Martinez, the non-examining consultant, than to Miller, the examining consultant. (Docket ## 8-1 at 21-23; 12 at 1-4). I reject Martin's contrary contentions that the ALJ failed to provide adequate reasons for rejecting Miller's opinion and improperly relied upon Martinez's opinion. (*Id.*).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[8]). When evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship;

    (2)    the evidence in support of the physician's opinion;

    (3)    the consistency of the opinion with the record as a whole;

    (4)    whether the opinion is from a specialist; and

    (5)    whatever other factors tend to support or contradict the opinion.

---

[7] I disagree with Martin insofar as he suggests that his attorney notified the ALJ at the hearing of a gap in the mental health treatment records. (Docket # 12 at 2). Martin's attorney never suggested to the ALJ that the record was not complete because it did not contain all of the Mid-Erie treatment records. Rather, she identified two additional medical providers, Sisters of Charity Hospital and UBMD Orthopaedics and Sports Medicine, from which she intended to obtain and submit additional records. (Tr. 434-35, 675).

[8] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Spielberg v. Barnhart*, 367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)"). "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013).

In this case, the ALJ explained that he rejected Miller's opinion as unreliable because Martin had made several statements to Miller during the evaluation that were inconsistent with the record. (Tr. 376). According to the ALJ, Martin's misstatements, which overstated the severity of his symptoms, undermined the reliability of Miller's opinion. (*Id.*).

First, as correctly noted by the ALJ, Martin denied drug or alcohol use, despite having attended chemical dependency treatment in the past, having been diagnosed with alcohol use disorder, and having recently used alcohol on occasion. (Tr. 376, 694, 810, 818-21). The ALJ also noted that Martin reported to Miller that he experienced "frequent visual hallucinations in which he sees a[n] [unknown] person sitting in the room," but never reported those symptoms to his mental health treatment providers. (Tr. 376, 694). The ALJ further noted that Martin told Miller that he never takes public transportation, despite other statements by Martin in the record that he was able to go out alone and was a "people person." (Tr. 376, 696). Finally, the ALJ also observed that Martin's report to Miller that he suffered from poor cognition was inconsistent with the record. (Tr. 376).

Martin is correct that the Horizon treatment records that he submitted following the hearing document that he reported visual hallucinations in 2018 (subsequent to his evaluation

with Miller). (Tr. 409, 419, 825). Despite those recent reports, no other mental health records mention hallucinations. It is certainly reasonable to expect that the Mid-Erie treatment records, which contained records of other mental health symptoms, would likely document symptoms as significant as hallucinations if they were chronic or frequent.[9] In any event, the ALJ was correct in his observations that Martin misstated his alcohol use history and that his statements to Miller that he was unable to use public transportation independently were contradicted by other contrary statements in the record. (Tr. 42, 117, 372, 455, 647). With respect to Martin's reports of poor cognition, Miller noted some deficits in attention and concentration and memory skills, which he attributed to Martin's "limited intellectual functioning." (Tr. 695). Miller assessed Martin's cognitive functioning to be below average and recommended further evaluation to rule out "borderline intellectual functioning." (Tr. 696). As the ALJ recognized, however, the record contained no suggestion by any of his treatment providers that Martin suffered from cognitive deficits. (Tr. 376). Indeed, Martin himself acknowledged that he was successful with his courses in high school and college, earned a 3.4 grade point average in college before withdrawing, and frequently read literature and wrote poetry. (Tr. 108, 479-81, 798).

In sum, I find that the ALJ did not err in declining to give weight to Miller's opinion for the reasons he stated. *See Pellam v. Astrue*, 508 F. App'x at 90 (ALJ properly discounted opinion of consultant where claimant refused to perform portions of examination and was not completely forthcoming during the examination); *Townsend v. Comm'r of Soc. Sec.*, 2012 WL 6628689, *5-6 (W.D. Mich.) (ALJ properly "recognized the [consultative] examination's limited utility given plaintiff's failure to cooperate" and properly discounted the

---

[9] Martin counters that Gupta's missing treatment records might contain reports of hallucinations. (Docket # 12 at 1). As noted above, the treatment records provided included notes from Martin's psychotherapy sessions for approximately one year and a several-year summary of the treatment he received at Mid-Erie. No mentions of hallucinations are reflected in those records.

diagnosis of pain disorder where ALJ "found that plaintiff's subjective complaints were not fully credible"), *report and recommendation adopted by*, 2012 WL 6628750 (W.D. Mich. 2012); *MKW v. United States Comm'r, Soc. Sec. Admin.*, 2012 WL 2930461, *3 (W.D. La.) ("[ALJ] was well justified in affording little weight to the consultative examiner given the lack of objective medical history to support such extreme limitations, and the prior finding that [p]laintiff had likely attempted to exaggerate his symptoms during a similar examination"), *report and recommendation adopted by*, 2012 WL 2930933 (W.D. La. 2012).

    I also disagree with Martin's contention that the ALJ erred by according "great weight" to Martinez's opinion. (Docket # 8-1 at 20-22). As an initial matter, I reject Martin's suggestion that Martinez's opinion should have been discounted because the record she received did not contain all of the Mid-Erie counseling records. (*Id.*). The ALJ requested but did not receive them; moreover, Martinez confirmed at the hearing that the available treatment records were sufficient to permit her to render an opinion. (Tr. 447-48). Relevant caselaw makes clear that the opinion of a non-examining physician may be entitled to more weight than the opinion of a treating source or, as in this case, an examining physician, particularly where the latter is contradicted by substantial evidence in the record. *See Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018) ("contrary to [p]laintiff's assertions, it is well-settled that the opinion of a non-examining source may be credited over that of an examining physician, particularly where the examining source's opinion is contradicted by the record"); *O'Grady v. Astrue*, 2012 WL 3727220, *19 (D. Conn. 2012) ("[w]here the opinion of the treating physician is inconsistent with other substantial evidence in the record and, therefore, not entitled to controlling weight, an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded controlling weight"); *Cyr v. Astrue*, 2011 WL 3652493,

*11 (D. Conn. 2011) ("if the treating physician's opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts, it is not entitled to controlling weight[;] . . . [i]n this case, [the treating physician's] opinion is contradicted by substantial evidence in the record, which means that the opinion of a non-examining DDS doctor can be entitled to controlling weight").  On this record, I conclude that the ALJ did not err in weighing the medical opinions of record.

## CONCLUSION

This Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Martin's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and Martin's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

          *s/Marian W. Payson*
          MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
       February 10, 2020